UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Alexis Jesus Rojas Medina,<br><br>    Petitioner<br><br>v.<br><br>John Mattos, et al.,<br><br>    Respondents | Case No. 2:25-cv-02020-CDS-BNW<br><br>**Order Granting in Part Petitioner's<br>Writ of Habeas Corpus**<br><br>[ECF No. 1] |

    Petitioner Alexis Rojas Medina initiated this action on October 18, 2025, by filing a petition for writ of habeas corpus. *See* Pet. for writ., ECF No. 1. Therein, Rojas Medina requests a writ ordering the respondents to immediately release him, declaring that ICE's detention without any showing of change in circumstances violates his Fifth Amendment due process rights, and granting other related relief. *Id.* The respondents filed a response to the petition. Resp., ECF No. 9 [1] This petition is fully briefed. *See* Reply, ECF No. 10.

    I held a hearing on the petition on December 30, 2025. At the conclusion of the hearing, after considering the moving papers, together with the parties' arguments, I granted the petitioner's writ of habeas corpus. This order memorializes my findings.

I.    **Background**

    Rojas Medina is a citizen of Venezuela who has been in immigration detention since September 9, 2025. ECF No. 1 at ¶ 16. The petitioner left Venezuela in 2018 after enduring years of persecution, ultimately coming to the United States. *Id.* at ¶ 24. He entered without inspection on August 14, 2022, and was detained by ICE. *Id.* at ¶¶ 24–25; Aff. of Margin Marin Rodriguez, Pet.'s Ex. E, ECF No. 1-1; DHS immigration entry docs., Pet.'s Ex. F, ECF No. 1-1.

---

[1] The named respondents are John Mattos, Warden of the Nevada Southern Detention Center; Jason Knight, Acting Las Vegas/Salt Lake City Field Office Director; Joseph B. Edlow, Director of USCIS; Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General of the United States; Daren K. Margolin, Director of the Executive Office of Immigration Review.

Rojas Medina was released into the United States with a parole document, valid for one year. ECF No. 1 at ¶ 27; Pet.'s Ex. F, ECF No. 1-1. He then applied for Temporary Protected Status (TPS) under the Immigration and Nationality Act. ECF No. 1 at ¶ 28. On April 23, 2025, Rojas Medina was granted TPS. *Id.* at ¶ 29. His notice indicated that his TPS was valid from April 23, 2025, to October 2, 2026. *Id.*; USCIS approval notice, Pet.'s Ex. A, ECF No. 1-1.

As alleged in the petition, on August 26, 2025, Rojas Medina was mistakenly arrested— Utah police confused the petitioner for his twin brother, and he was charged for aggravated assault and domestic violence in the presence of a child. ECF No. 1 at ¶ 30; Third district court stip., Pet.'s Ex. B, ECF No. 1-1; Utah court docket, Pet.'s Ex. C, ECF No. 1-1. But after an investigation, the arrest based on mistaken identity was confirmed. ECF No. 1 at ¶ 32. Once the Salt Lake District Attorney's Office notified Salt Lake Third District Court of the case of mistaken identity, District Court Judge Coral Sanchez issued an order on September 7, 2025, dismissing with prejudice all charges against the petitioner. *Id.* at ¶ 35. However, Rojas Medina was not released from Salt Lake County Jail; instead, the petitioner was placed in ICE's custody. *Id.* at ¶ 37; John West aff., Pet.'s Ex. D, ECF No. 1-1. The petitioner's counsel contacted ICE to inquire about the petitioner's detention, an ICE official advised that Rojas Medina would remain in detention and was transported to the Nevada Southern Detention Center. ECF No. 1 at ¶¶ 38, 41. To date, the petitioner remains in custody. *Id.* at ¶ 43.

In the petition, Rojas Medina brings the following claims for relief: (1) unlawful withdrawal of TPS status; (2) unconstitutional and ultra vires application of 8 U.S.C. § 1225(b)(2)(A) and governing regulations regarding mandatory detention; and (3) violation of the Fifth Amendment right to due process of law. *See* ECF No. 1.[2]

---

[2] As stated on the record, because I sue sponte found that claim two is the same as claim three, I combine the relief sought from the claims, and only address claim two. Further, because Rojas Medina is entitled to relief on claim two, I decline to reach a final determination on claim one.

II.  **Legal standard**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

III.  **Discussion**

   A.  **The petitioner's petition is granted in part.**

   *1.  The petitioner is subject to § 1226(a), not § 1225(b)(2)(A).*

Under claim two, the petitioner contends that the respondents' novel interpretation of 8 U.S.C. § 1225(b)(2)(A) as authority for now detaining the petitioner without bond violates the regulations and is an unconstitutional interpretation of the statutory language, without basis in prior precedent or the record of congressional intent. ECF No. 1 at ¶ 125. The petitioner further argues that the respondents' continued detention of the petitioner, without bond or even access to request for bond, is a clear violation of his constitutional right to due process under the law. *Id.* at ¶ 131. Moreover, Rojas Medina asserts that the respondents have not demonstrated that the petitioner needs to be detained. *Id.* at ¶ 133.

The respondents argue that Rojas Medina is considered an applicant for admission. ECF No. 9 at 10. The respondents further assert that the petitioner is "an alien present without admission in 8 U.S.C. § 1229a removal proceedings, is an applicant for admission and an alien seeking admission," so he is subject to detention under § 1225(b)(2)(A) and ineligible for a bond redetermination hearing. *Id.* at 11.

But Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1226(a) on the other hand states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . .

§ 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention, and § 1226 allows for the release of the noncitizen on conditional parole or bond.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *Corley v. United States*, 556 U.S. 303, 314 (2009). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

4

As a threshold matter, Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible **arriving aliens**; referral for hearing." 8 U.S.C. § 1225 (emphasis added). This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). And Section 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Important here, the INA defines an "applicant for admission" as "[a]n alien present in the United States who **has not been admitted or who arrives in the United States**" *See id.* at § 1225(a)(1) (emphasis added). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* at § 1101(a)(13). The word "entry" is not defined in the INA. *See generally id.* at § 1101. But the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Dec. 30, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I & N Dec. 467, 468 (BIA 1973)). The phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Dec. 30, 2025). And the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted).

The respondents argue that the petitioner is an applicant for admission. ECF No. 9 at 10. Specifically, the respondents' position is that § 1225 is the applicable detention authority for "all applicants for admission"—this includes both "arriving aliens and aliens present without admission." *Id.* at 11. But this reading of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary and therefore improper. "It is 'a cardinal principle of statutory

construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—I presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings." (citation omitted)).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552. Additionally, Congress's decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 shows Congress's intent to address noncitizens arriving "at a border or port of entry." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025); 8 U.S.C. § 1225(a)(2)(3).

In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens [as set forth in § 1225,] from its more general section for 'Apprehension and detention of aliens,' [as set forth in] § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 122 (2023)). As the U.S. Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." In contrast, "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, *Jennings* differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *Id.* at 288–89.

Here, Rojas Medina is not actively seeking to lawfully cross into the territorial limits of the United States because he already entered the United States, on August 14, 2022. *See* ECF No. 1 at ¶ 24. And he was released into the United States with a parole document valid for one year. *Id.* at ¶ 27. Rojas Medina then applied for a TPS, which was granted on April 23, 2025. *Id.* at ¶ 29. While his mistaken-identity-arrest served as a catalyst to his TPS being removed, this does not change that it is § 1226(a), not § 1225(b)(2)(A), that governs the petitioner's detention. Accordingly, Rojas Medina is entitled to relief on claim two of his petition. Respondents must provide Rojas Medina with a bond hearing under 8 U.S.C. § 1226(a) within one week of the December 30, 2025 hearing. As stated on the record, this hearing must occur by January 6, 2026.

### 2. *The petitioner's due process rights have been violated.*

Rojas Medina argues that his detention violates the Fifth Amendment's Due Process Clause. ECF No. 1 at 24. The respondents assert that because the petitioner is subject to mandatory detention—and, in turn, his petition should be denied—because he no longer has TPS due to the 2023 Venezuela TPS designation being terminated, and his TPS application was not approved by the required date. ECF No. 9 at 3, 7.

For the reasons explained above, Rojas Medina's detention is governed by § 1226(a), not § 1225(b)(2)(A) so, Rojas Medina's current detention under § 1225(b)(2)(A) violates the petitioner's Fifth Amendment due process rights.

### B. **The petitioner's request for attorney's fees and costs is denied without prejudice.**

The petitioner moves for costs and attorney's fees pursuant to the Equal Access to Justice Act (EAJA). *See* ECF No. 1 at 26, ¶ g. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States

was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

Here, the petitioner's requested fees and costs under the EAJA is premature because the court has not yet entered a final judgment. Thus, the request is denied without prejudice. The court will consider a motion seeking reasonable fees and costs under the EAJA filed within thirty days of the judgment.

IV.   Conclusion

IT IS ORDERED the Rojas Medina's petition for writ of habeas corpus [ECF No. 1] is **GRANTED in part, as set forth in this order.**

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a bond hearing, and this bond hearing must occur **by January 6, 2026.**

IT IS FURTHER ORDERED that the respondents **must immediately release the petitioner from custody**, and if applicable, subject to any prior order of supervision.

IT IS FURTHER ORDERED that the respondents must file a status report no later than **Tuesday, January 13, 2026,** advising that status of compliance with this order. The status report must also include the parties' position regarding whether this matter should remain open or can be closed.

IT IS FURTHER ORDERED that the petitioner's request for attorney's fees is denied without prejudice.

Dated: January 4, 2026

_____
Cristina D. Silva
United States District Judge